UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ALLEN MORRIS,

                                    Plaintiff,
                                                            9:10-CV-0041
v.                                                          (LEK/GHL)

CALVIN RABSATT, P. BARR, SGT. MCLEAR,
J. RUPERT,

                                    Defendants.

_____

APPEARANCES:                                OF COUNSEL:

ALLEN MORRIS, 87-A-3121
Plaintiff *pro se*
Oneida Correctional Facility
P.O. Box 4580
Rome, NY 13442-4580

HON. ANDREW M. CUOMO                CHRISTINA L. ROBERTS-RYBA, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION and ORDER</u>

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Allen Morris alleges that Defendants falsely accused him of having a weapon in his cell

to retaliate against him for filing a lawsuit.  Currently pending before the Court is Defendants'

motion to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure

12(b)(6). (Dkt. No. 20.) For the reasons that follow, I recommend that Defendants' motion be denied.

## I.      BACKGROUND

Plaintiff was, at the time of the events relevant to this action, an inmate at Riverview Correctional Facility. (Dkt. No. 9 ¶ 6.) Plaintiff alleges that on November 25, 2009, Defendant Correction Officer P. Barr framed Plaintiff by pretending to find a weapon in Plaintiff's cubicle. *Id*. Plaintiff alleges that Defendant Barr's actions were "clearly a set-up" because Defendant Correction Officer P. Rupert had "the misbehavior report on his desk prepared to write . . . before the cube search was even conducted." *Id.* Plaintiff protested that the weapon did not belong to him. *Id*. at 6. Shortly thereafter, Defendant Sgt. McLear escorted Plaintiff to the Special Housing Unit ("SHU"). *Id.* When Plaintiff told Defendant McLear that he had been set up, Defendant McLear told him to shut up or he would come to the hearing and testify against Plaintiff. *Id*.

While housed in the SHU, Plaintiff wrote to Defendant Calvin Rabsatt, the superintendent of Riverview, explaining that he had been set up. *Id.* Defendant Rabsatt did not respond. *Id*.

When Plaintiff had been in the SHU for seven days, he was released into the facility's general population and the misbehavior report was expunged from his record. *Id*.

Plaintiff alleges that Defendants retaliated against him because he had previously filed a complaint against the Superintendent of Cape Vincent Correctional Facility and the Jefferson County Public Defender's Office. *Id*. Plaintiff requests ten million dollars in damages. *Id*. ¶ 9.

Plaintiff states in the complaint that he did not file a grievance regarding these events

"because the issue is ungrievable."  *Id*. ¶ 4(b).

Defendants now move to dismiss the complaint, arguing that it is barred because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  (Dkt. No. 20.)  Plaintiff has opposed the motion.  (Dkt. No. 21.)  Defendants have filed a reply.  (Dkt. No. 22.)

## II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief."  *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

A prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable claim under 42 U.S.C. § 1983. *Jones v. Bock*, 549 U.S.199, 211-17 (2007). "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id*. at 215-16.

III.    ANALYSIS

Defendants argue that this action must be dismissed with prejudice because the face of the complaint shows that Plaintiff failed to exhaust his administrative remedies and it is now too late for him to do so. (Dkt. No. 20-2.) Although this is a close question, I find that the record currently before the Court does not support dismissal for failure to exhaust.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In

order to properly exhaust administrative remedies under the PLRA, inmates are required to

complete the administrative review process in accordance with the rules applicable to the

particular institution to which they are confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

 In New York state prisons, the Department of Correctional Services ("DOCS") has a

well-established three-step inmate grievance program ("IGP"), which is the proper procedure for

exhausting most, but not all, claims.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (2010).  First,

an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of

the alleged occurrence.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a) (2010).  A representative

of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from

receipt of the grievance to informally resolve the issue.  *Id.* at (b)(1).  If there is no such informal

resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the

grievance, and issues a written decision within two working days of the conclusion of the

hearing.  *Id.* at (b)(2).  At the second step, a grievant may appeal the IGRC decision to the

facility's superintendent within seven calendar days of receipt of the IGRC's written decision.

*Id.* at (c).  At the third step, a grievant may appeal to the Central Office Review Committee ("the

CORC") within seven working days of receipt of the superintendent's written decision.  *Id.*  at

(d).  "To properly exhaust administrative remedies, an inmate must file an appeal with the

CORC."  *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009).

 DOCS also has an expedited procedure for inmates who wish to file a grievance alleging

harassment.[1]  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.8 (2010).  Under this procedure, the

inmate is required to file a grievance with the facility's IGP clerk as under the normal program.

*Id*.(a).  Rather than being reviewed under the normal guidelines, however, the grievance "must be

forwarded to the superintendent by close of business that day."  *Id*. (b).  The superintendent "shall

promptly determine whether the grievance, if true, would represent a bona fide case of

harassment . . . If not, then it shall be returned to the IGRC for normal processing."  *Id.* (c).  If the

superintendent determines that the grievance presents a "bona fide harassment issue," he must

either initiate an in-house investigation, request an investigation by the Inspector General's office,

or request an investigation by the New York State Police, Bureau of Criminal Investigation.  *Id*.

(d).  If the inmate is dissatisfied with the superintendent's response or if the superintendent fails

to respond to the grievance, the inmate may appeal to the CORC.  *Id*. (g) - (h).

   DOCS has a separate and distinct administrative process for inmates to appeal the result of

disciplinary hearings, which is not referred to as a "grievance" process.  In fact, the regulations

specifically state that the results of disciplinary hearings are "non-grievable."  N.Y. Comp. Codes

R. & Regs. tit. 7, § 701.3(e)(1)-(2) (2010).  Rather than "grieving" the result, an inmate who is

dissatisfied with the result of a Tier II hearing must file an appeal with the facility superintendent

within seventy-two hours of receiving the written disposition of the disciplinary hearing.  N.Y.

Comp. Codes R. & Regs. tit. 7, § 253.8 (2010).  An inmate who is dissatisfied with the result of a

Tier III hearing must file an appeal to the commissioner within thirty days of receiving the

written disposition.   N.Y. Comp. Codes R. & Regs. tit. 7, § 254.8 (2010).  The filing of such an

---

[1]      The regulations define "harassment" as "employee misconduct meant to annoy, intimidate or harm an inmate."  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.2(e) (2010).

appeal constitutes exhaustion under the PLRA. *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009).

DOCS' regulations note that if an inmate is unsure whether an issue is grievable or non-grievable, he should "file a grievance and the question will be decided through the grievance process." N.Y. Comp. Codes. R. & Regs. tit. 7, § 701.3(e).

Here, the face of the complaint shows that Plaintiff did not properly follow either the standard three-step procedure or the expedited procedure for allegations of harassment by staff. Both of those procedures require an inmate to file a grievance with the IGP clerk, which Plaintiff admits on the face of his complaint he did not do. (Dkt. No. 9 ¶ 4.)

The complaint states that Plaintiff was not required to file a grievance because the issues that concerned him were "non-grievable." *Id*. However, the face of the complaint shows that Plaintiff did not follow the proper procedures for exhausting "non-grievable" disciplinary issues by appealing the results of a disciplinary hearing. Although a letter to the Superintendent would have been the proper method of appealing an unfavorable disciplinary disposition, it does not appear that Plaintiff ever received such a disposition. Plaintiff alleges that he was escorted to the SHU after the incident and that he remained there for seven days before "the ticket was expunged off his record" and he was "released and restored back to population status." (Dkt. No. 9 at 6.) This plausibly suggests two scenarios: (1) that Plaintiff successfully defended himself at a disciplinary hearing and was then released from the SHU, in which case there was no unfavorable disposition to appeal; or (2) the misbehavior report was withdrawn before a disciplinary hearing was conducted, in which case there also was no unfavorable disposition to appeal. Therefore, the letter Plaintiff wrote to Defendant Superintendent Rabsatt while he was

in the SHU did not serve to properly exhaust his "non-grievable" issues.

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[2] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and internal quotations omitted).

Here, neither of the first two *Hemphill* inquiries save Plaintiff's complaint. As discussed above, administrative remedies were available to Plaintiff. Defendants have preserved the exhaustion defense by raising it in their motion to dismiss. Plaintiff has not indicated, either on the face of the complaint or in his opposition papers, that Defendants inhibited his exhaustion of administrative remedies in any way. Thus, the Court must consider whether special

---

[2]     The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

circumstances have been plausibly alleged that justify Plaintiff's failure to comply with the

administrative procedural requirements.

Justification "must be determined by looking at the circumstances which might

understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way."

*Giano v. Good*, 380 F.3d 670, 678 (2d Cir. 2004).  Plaintiff argues that he could not exhaust his

administrative remedies by filing a grievance because the results of disciplinary hearings and

matters under investigation by the Inspector General are "non-grievable."[3]  (Dkt. No. 21 at 1.)  As

discussed above, DOCS regulations clearly state that  if an inmate is unsure whether an issue is

grievable or non-grievable, he should "file a grievance and the question will be decided through

the grievance process."  N.Y. Comp. Codes. R. & Regs. tit. 7, § 701.3(e).  On the other hand, "a

letter to the Superintendent who then commences an Inspector General investigation can

constitute 'special circumstances' that satisfy the PLRA requirement that prison officials be

afforded time and opportunity to address prisoner complaints internally."  *Hairston v. LaMarche*,

No. 05 Civ. 6642, 2006 U.S. Dist. LEXIS 55436, at * 32,  2006 WL 2309592, at *9 (S.D.N.Y.

Aug. 10, 2006).[4]  Plaintiff's complaint and his opposition to the motion to dismiss plausibly

suggest that Defendant Rabsatt forwarded Plaintiff's letter to the Inspector General for

investigation.  This suggestion may, of course, be refuted through evidence at a later stage in this

---

[3]      Plaintiff asserts in his opposition that "at the time of filing, this matter was being investigated by the Inspector General's office."  (Dkt. No. 21 at 1.)  The complaint itself makes no reference to an Inspector General investigation.  As discussed above, Plaintiff is not required to plead facts proving exhaustion because failure to exhaust is an affirmative defense rather than an element of Plaintiff's cause of action.

[4]      The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

litigation.  However, given the state of the pleadings, the special solicitude that must be granted

to *pro se* civil rights litigants, and the fact that failure to exhaust is an affirmative defense that

generally cannot be determined on a motion to dismiss, I recommend that the Court deny

Defendants' motion to dismiss.

       **ACCORDINGLY**, it is

       **RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt.

No. 20) be **DENIED;** and it is further

       **ORDERED** that the Clerk provide Plaintiff with a copy of *Hairston v. LaMarche*, No. 05

Civ. 6642, 2006 U.S. Dist. LEXIS 55436, 2006 WL 2309592 (S.D.N.Y. Aug. 10, 2006) in

accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

       Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: October 18, 2010
      Syracuse, New York

                                George H. Lowe
                                United States Magistrate Judge