UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ALLEN MORRIS,

                                        Plaintiff,
                                                                9:10-CV-0041
v.                                                              (MAD/GHL)

CALVIN RABSATT, P. BARR, SGT. MCLEAR,
J. RUPERT,

                                        Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

ALLEN MORRIS, 87-A-3121
Plaintiff *pro se*
Livingston Correctional Facility
P.O. Box 91
Sonyea, NY 14556

HON. ERIC T. SCHNEIDERMAN            WILLIAM J. MCCARTHY, JR., ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Allen Morris alleges that Defendants falsely accused him of having a weapon in his cell to

retaliate against him for making complaints against the Cape Vincent Correctional Facility and

the Jefferson County Public Defender's Office.  (Dkt. No. 9 ¶ 6.)  Currently pending before the

Court is Defendants' motion for summary judgment pursuant to Federal Rules of Civil Procedure

56.[1]  (Dkt. No. 34.)  For the reasons that follow, I recommend that Defendants' motion be

granted.

## I.      LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary

judgment bears the initial burden of showing, through the production of admissible evidence, that

no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir.

2006).  Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d

at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the

[plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material

facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).  Rather,

a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).  In determining whether a genuine issue of material[2] fact exists, the Court must resolve

all ambiguities and draw all reasonable inferences against the moving party.  *Major League*

*Baseball Props., Inc. v. Salvino*, Inc., 542 F.3d 290, 309 (2d Cir. 2008).

---

[1]Also pending is Plaintiff's motion to compel discovery and strike documents.  (Dkt. No. 32.)  It will be addressed below.

[2]A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

In filing this motion for summary judgment, Defendants filed a Statement Pursuant to

Rule 7.1(a)(3) in compliance with the Local Rules of this District.[3]  (Dkt. No. 34-1.)  Plaintiff did

not file a response to this Statement, in contravention of this Rule.[4]  Where a plaintiff has failed

to properly respond to a defendant's Statement of Material Facts (a/k/a its "Rule 7.1 Statement"),

the facts as set forth in that Rule 7.1 Statement will be accepted as true[5] to the extent that (1)

those facts are supported by the evidence in the record,[6] and (2) the non-moving party, if he is

proceeding *pro se*, has been specifically advised of the potential consequences of failing to

respond to the movant's motion for summary judgment.  *See Champion,* 76 F.3d at 486; *cf.*

_____

[3]Local Rule 7.1(a)(3) provides, in part: "Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established."

[4]*See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.").

[5]*See* N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis in original).

[6]*See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") (internal quotation marks and citations omitted).

N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).  The

Court notes that Defendants provided Plaintiff with this District's "Notification of the

Consequences of Failing to Respond to a Summary Judgment Motion."  (Dkt. No. 34 at 3.[7])

## II.     FACTUAL BACKGROUND

Plaintiff was, at the time of the events relevant to this action, an inmate at Riverview

Correctional Facility.  (Dkt. No. 34-3 at 17:7-9.[8])  On November 25, 2009, Defendant Correction

Officer Rupert received a "snitch note" on his desk stating that Plaintiff had a weapon in his

cube.  (Dkt. No. 34-7 ¶ 6.)  This was reported to Defendant Sergeant McLear, who directed

Defendant Barr to conduct a pat frisk of Plaintiff and a search of his cube.  (Dkt. No. 34-6 ¶ 7;

Dkt. No. 34-7 ¶ 12.)  Defendant Barr carried out the pat frisk and search.  (Dkt. No. 34-6 ¶ 9.)

During Defendant Barr's search of the cube, an item of contraband was discovered; it was a

rolled-up can top with black electrical tape on one end.  *Id.* ¶¶ 10-11.  Defendant Barr notified

Defendant McLear, who escorted Plaintiff first to the infirmary and then to the Special Housing

Unit ("SHU").  (Dkt. No. 34-5 ¶¶ 9-10.)  Defendant Barr wrote up an Inmate Misbehavior

Report.  (Dkt. No. 34-6 ¶ 14.)

Plaintiff alleges that Defendant Barr's actions were "clearly a set-up" because Defendant

Rupert had the misbehavior report on his desk before the search was conducted.  (Dkt. No. 9 ¶ 6;

Dkt. No. 34-3 at 16:20-25.)  Plaintiff maintains that the weapon did not belong to him.  (Dkt. No.

34-3 at 9:1-6.)

---

[7]The Court advises Defendants that there is an updated "Notification of the Consequences
of Failing to Respond to a Summary Judgment Motion" form on the Northern District website
(www.nynd.uscourts.gov) under the "e-Library" link.

[8]Citations to Plaintiff's deposition refer to the page numbers of the transcript.

Plaintiff alleges that Defendants retaliated against him because he had previously made complaints against the Superintendent of Cape Vincent Correctional Facility and the Jefferson County Public Defender's Office. (Dkt. No. 9 ¶ 6.)  He claims that Defendants knew about his complaints because when he arrived at Riverview along with several other inmates, a non-party corrections officer asked him which one of them had "the drug case." (Dkt. No. 34-3 at 18:7-15 and 19:21-23.)  It is not clear from the record whether or not Plaintiff confirmed that it was he who was involved.

At the time of Plaintiff's deposition on March 18, 2011, he had two lawsuits pending in the Northern District of New York.  One was *Morris v. Barkley*, 09-CV-1413 (N.D.N.Y.), wherein Plaintiff alleged he was improperly charged with possession of drugs while incarcerated at Cape Vincent Correctional Facility.  *Id.* at Dkt. No. 8 ¶ 6.  The other case was *Morris v. Jefferson County Public Defender's Office*, 09-CV-1412 (N.D.N.Y.), wherein he alleged ineffective assistance of counsel.  *Id.* at Dkt. No. 1 ¶ 6.  However, both of these lawsuits were filed on December 21, 2009, which was nearly a month *after* the events alleged in this action. Plaintiff may have filed grievances or made verbal complaints with respect to his claims against Cape Vincent Correctional Facility and against the Jefferson County Public Defender's Office, but there is no reference in the record before the Court about any complaints made prior to the search of Plaintiff's cube on November 25, 2009.

Defendants have now moved for summary judgment. (Dkt. No. 34.)  Plaintiff has opposed the motion. (Dkt. No. 41.)  Defendants have filed a letter in reply, essentially resting on the arguments made in their motion. (Dkt. No. 43.)

Prior to Defendants' motion for summary judgment, Plaintiff filed a motion to compel

certain items of discovery and to strike certain documents provided by Defendants as part of the

discovery process.  (Dkt. No. 32.)  Defendants did not file a response to this motion.

III.    ANALYSIS

A.    Exhaustion of Administrative Remedies

Defendants argue that this action must be dismissed because Plaintiff failed to exhaust his

administrative remedies.  (Dkt. No. 34-2 at 4-6.[9])  Defendants also made this argument in an

earlier motion to dismiss this action.  (Dkt. No. 20.)  Plaintiff submits that he is excused from

this requirement because this action pertains to matters that are "non-grievable."  (Dkt. No. 9 ¶ 4;

Dkt. No. 41 ¶¶ 6-7.)

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."  42

U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In

order to properly exhaust administrative remedies under the PLRA, inmates are required to

complete the administrative review process in accordance with the rules applicable to the

particular institution to which they are confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

In New York state prisons, the Department of Corrections and Community Supervision

("DOCCS") has a well-established three-step inmate grievance program ("IGP"), which is the

_____

[9]Citations to Defendant's Memorandum of Law refer to the internal page numbers of the
document.

proper procedure for exhausting most, but not all, claims.  N.Y. Comp. Codes R. & Regs. tit. 7, §

701.7 (2010).  First, an inmate must file a complaint with the facility's IGP clerk within twenty-

one calendar days of the alleged occurrence.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)

(2010).  A representative of the facility's inmate grievance resolution committee ("IGRC") has

sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id.* at (b)(1).

If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen

calendar days of receipt of the grievance, and issues a written decision within two working days

of the conclusion of the hearing.  *Id.* at (b)(2).  At the second step, a grievant may appeal the

IGRC decision to the facility's superintendent within seven calendar days of receipt of the

IGRC's written decision.  *Id.* at (c).  At the third step, a grievant may appeal to the Central Office

Review Committee ("the CORC") within seven working days of receipt of the superintendent's

written decision.  *Id*. at (d).  "To properly exhaust administrative remedies, an inmate must file

an appeal with the CORC."  *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009).

DOCCS also has an expedited procedure for inmates who wish to file a grievance

alleging harassment.[10]  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.8 (2010).  Under this

procedure, the inmate is required to file a grievance with the facility's IGP clerk as under the

normal program.  *Id*. (a).  Rather than being reviewed under the normal guidelines, however, the

grievance "must be forwarded to the superintendent by close of business that day."  *Id*. (b).  The

superintendent "shall promptly determine whether the grievance, if true, would represent a bona

fide case of harassment . . . If not, then it shall be returned to the IGRC for normal processing."

---

[10]The regulations define "harassment" as "employee misconduct meant to annoy,
intimidate or harm an inmate."  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.2(e) (2010).

*Id.* (c).  If the superintendent determines that the grievance presents a "bona fide harassment issue," he must either initiate an in-house investigation, request an investigation by the Inspector General's office, or request an investigation by the New York State Police, Bureau of Criminal Investigation.  *Id*. (d).  If the inmate is dissatisfied with the superintendent's response or if the superintendent fails to respond to the grievance, the inmate may appeal to the CORC.  *Id*. (g) - (h).

DOCCS has a separate and distinct administrative process for inmates to appeal the result of disciplinary hearings, which is not referred to as a "grievance" process.  In fact, the regulations specifically state that the results of disciplinary hearings are "non-grievable."  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(e)(1)-(2) (2010).  Rather than "grieving" the result, an inmate who is dissatisfied with the result of a Tier II hearing must file an appeal with the facility superintendent within seventy-two hours of receiving the written disposition of the disciplinary hearing.  N.Y. Comp. Codes R. & Regs. tit. 7, § 253.8 (2010).  An inmate who is dissatisfied with the result of a Tier III hearing must file an appeal to the commissioner within thirty days of receiving the written disposition.   N.Y. Comp. Codes R. & Regs. tit. 7, § 254.8 (2010).  The filing of such an appeal constitutes exhaustion under the PLRA.  *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009).

DOCCS' regulations note that if an inmate is unsure whether an issue is grievable or non-grievable, he should "file a grievance and the question will be decided through the grievance process."  N.Y. Comp. Codes. R. & Regs. tit. 7, § 701.3(e).

It is clear that Plaintiff did not properly follow either the standard three-step procedure or the expedited procedure for allegations of harassment by staff.  Both of those procedures require

an inmate to file a grievance with the IGP clerk, which Plaintiff admits on the face of his

complaint he did not do.  (Dkt. No. 9 ¶ 4.)

Plaintiff states that he was not required to file a grievance because the issues that

concerned him were "non-grievable." *Id*.  DOCCS' regulations specifically state that the results

of disciplinary hearings are "non-grievable." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(e)(1)-

(2) (2010).   However, Plaintiff did not have a disciplinary hearing.  (Dkt. No. 34-3 at 7:12-14.)

Therefore, there was nothing to appeal.  Plaintiff testified that he was escorted to the SHU after

the incident and that he remained there for seven days before "the ticket was expunged off his

record" and he was "released and restored back to population status." (Dkt. No. 9 at 6; Dkt. No.

34-3 at 7:16-17.)  It does not appear that Plaintiff's issue was "non-grievable," as that term is

utilized by DOCCS' regulations.  Therefore, this Court finds that Plaintiff failed to exhaust his

administrative remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry.  The Second Circuit has

held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available

administrative remedies.  *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir.

2004).[11] First, "the court must ask whether [the] administrative remedies [not pursued by the

prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted).

Second, if those remedies were available, "the court should . . . inquire as to whether [some or all

of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to

raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's]

---

[11]The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81.  *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted).  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and internal quotations omitted).

Here, neither of the first two *Hemphill* inquiries save Plaintiff's complaint.  As discussed above, administrative remedies were available to Plaintiff.  Defendants have preserved the exhaustion defense by raising it in their answer. (Dkt. No. 26 ¶ 9.)  Plaintiff has not indicated that Defendants inhibited his exhaustion of administrative remedies in any way.  Thus, the Court must consider whether special circumstances have been plausibly alleged that justify Plaintiff's failure to comply with the administrative procedural requirements.

Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Good*, 380 F.3d 670, 678 (2d Cir. 2004).  Plaintiff argued in his response to Defendants' motion to dismiss that he could not exhaust his administrative remedies by filing a grievance because the results of disciplinary hearings and matters under investigation by the Inspector General are "non-grievable." (Dkt. No. 21 at 1.)  As discussed above, there was no disciplinary hearing held.  DOCCS regulations clearly state that  if an inmate is unsure whether an issue is grievable or non-grievable, he should "file a grievance and the question will be decided through the grievance process." N.Y. Comp. Codes. R. & Regs. tit. 7, § 701.3(e).  On the other hand, "a letter to the Superintendent who then commences an Inspector General investigation can

10

constitute 'special circumstances' that satisfy the PLRA requirement that prison officials be afforded time and opportunity to address prisoner complaints internally." *Hairston v. LaMarche*, No. 05 Civ. 6642, 2006 U.S. Dist. LEXIS 55436, at * 32,  2006 WL 2309592, at *9 (S.D.N.Y. Aug. 10, 2006).[12]

In this Court's Report-Recommendation on Defendants' motion to dismiss, later adopted by the Hon. Lawrence E. Kahn, I stated that "Plaintiff's complaint and his opposition to the motion to dismiss plausibly suggest that Defendant Rabsatt forwarded Plaintiff's letter to the Inspector General for investigation.  This suggestion may, of course, be refuted through evidence at a later stage in this litigation." (Dkt. Nos. 23 at 9-10, 24.)  Defendants have now come forward with evidence to refute this claim.  A declaration by Defendant Rabsatt has been submitted stating that he did not forward Plaintiff's complaint to the Inspector General's office for investigation.  (Dkt. No. 34-4 ¶ 12.)  Moreover, Defendants also submitted a letter from DOCCS stating that "[t]he Inspector General's office has no record of any investigation concerning this allegation." (Dkt. No. 34-3 at 57.[13])  In light of this evidence, and the fact that Plaintiff has offered nothing to dispute it, I recommend that Defendants' motion for summary judgment be granted because Plaintiff failed to exhaust his administrative remedies.

**B.      Retaliation**

Even if Plaintiff had not failed to exhaust his administrative remedies, Defendants should still be granted summary judgment because Plaintiff cannot sustain a claim for retaliation.

[12]A copy of this case was provided to Plaintiff with Defendants' motion papers.  (Dkt. No. 34-3 at 44-55.)

[13]Page number refers to the number assigned by the ECF system.

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389 F.3d at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239

F.3d 489, 492 [2d. Cir. 2001]).  Due to the fact that Plaintiff cannot demonstrate a causal

connection between his alleged complaints and the discovery of a weapon in his cube, I

recommend that Defendants be granted summary judgment.

The filing of a grievance against prison officials is constitutionally protected conduct.

*Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003);  *Graham v. Henderson,* 89 F.3d 75, 80 (2d

Cir. 1996).  "Prisoners ... have a constitutional right of access to the courts and to petition the

government for the redress of grievances."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Filing a lawsuit is constitutionally protected activity.  *Houston v. Zen Zen*, 388 F. Supp. 2d 172,

174 (W.D.N.Y. 2005).  Therefore, Plaintiff's filing of a lawsuit or grievance is protected conduct,

and satisfies the first prong of the *Mt. Healthy* criteria.

The Second Circuit defines "'adverse action' *objectively,* as retaliatory conduct 'that

would deter a similarly situated individual of ordinary firmness from exercising ... constitutional

rights.'"  *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)(quoting *Davis v. Goord*, 320 F.3d

346, 353 (2d Cir. 2003), *superceded by* 320 F.3d 346, 2003 WL 360053 (2d Cir. Feb. 10, 2003))

(emphasis in original).  It is possible, for the sake of argument, that if Plaintiff's allegations were

true, the actions of the corrections officers could be considered adverse.

The final part of the analysis centers on whether Plaintiff can show a causal connection

between his protected activity and the discovery of a weapon in his cube.  Several factors may be

considered in determining whether a causal connection exists between the plaintiff's protected

activity and a prison official's actions.  *Baskerville v. Blot*, 224 F.Supp. 2d 723, 732 (S.D.N.Y.

2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  Those factors include: (i) the

temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's

prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

Regarding temporal proximity, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted). No bright line test has been drawn "'to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'" *Id.* (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)). The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Id.* (citing *Gorman-Bakos*, 252 F.3d at 555 (suggesting the lapse of five months between protected activity and retaliation may show a causal connection). As discussed above, Plaintiff filed his lawsuits against the Cape Vincent Correctional Facility and the Jefferson County Public Defender's Office on December 21, 2009, which was after the search of his cubicle occurred; therefore, the lawsuits themselves cannot have caused the alleged retaliation. If he is alleging that the retaliation occurred as a result of other complaints he made, there is no evidence regarding if or when such a complaint or grievance was made, so there is no way to determine the temporal proximity of Plaintiff's complaints and the search of his cubicle.

There is no evidence in the record regarding Plaintiff's disciplinary history. Regarding the third factor, vindication of the inmate after a hearing may constitute circumstantial evidence

of a defendant's retaliatory motive. *Gayle*, 313 F.3d at 683 ("A false reason for the report's

issuance would support the inference that the real reason was the improper one: retaliation.").

However, as stated above, no disciplinary hearing took place.

The fourth factor involves analyzing any statements by the defendant concerning his or

her motivation. In support of the instant motion, Defendants have come forward with a

declaration from each Defendant stating that he was not aware of Plaintiff's complaints on the

day of the search of Plaintiff's cube. (Dkt. No. 34-4 ¶ 15; Dkt. No. 34-5 ¶ 17; Dkt. No. 34-6 ¶

23; Dkt. No. 34-7 ¶ 18.) Plaintiff has not submitted anything to refute this evidence. He claims

the officers knew about his complaints because another, non-defendant sergeant asked who had

the "drug case." (Dkt. No. 34-3 at 18:7-15.) However, there is no evidence in the record that

Defendants themselves knew about any complaints or took any action as a result of such

knowledge.

Plaintiff has not presented sufficient evidence to establish a triable issue of fact regarding

whether the corrections officers retaliated against him. Therefore, I recommend that Defendants'

motion for summary judgement be granted.

### C.      Motion to Compel and Motion to Strike

Prior to the filing of the motion for summary judgment, Plaintiff filed a motion to

compel. (Dkt. No. 32.) He is seeking a copy of the "snitch note," documents relating to a

purported investigation by DOCCS' Inspector General, a copy of the minutes from his deposition

of March 18, 2011, and a copy of Defendants' Notice of Compliance. *Id.* ¶ 6.

As an initial matter, Defendants have already established that the Inspector General's

office did not conduct any investigation into Plaintiff's allegations. (Dkt. No. 34-3 at 57; Dkt.

No. 34-4 ¶ 12.)  This Court is satisfied that Plaintiff was provided with a copy of Defendants'

Notice of Compliance because it was included in his motion to compel.  (Dkt. No. 32 at 18.[14])  It

is quite probable that Plaintiff was provided a copy of the minutes of his deposition because the

copy submitted in support of Defendants' motion contains two errata sheets with Plaintiff's

signature.  (Dkt. No. 34-3 at 5-6.[15])  In any event, a copy was provided to Plaintiff with

Defendants' motion.  (Dkt. No. 34-3.)   The only remaining item requested is the "snitch note."

Even if produced, this note would not cure the fatal flaws in Plaintiff's claims, namely, his failure

to exhaust administrative remedies and his inability to show a causal connection between any

complaints and the search of his cube.  Therefore, Plaintiff's motion to compel is denied.

The motion to compel also includes a motion to "strike" some of the documents

submitted to Plaintiff by Defendants as part of discovery, pursuant to Federal Rule of Civil

Procedure 12(f).  (Dkt. No. 32 ¶ 11.)  Federal Rule of Civil Procedure 12(f) permits a court to

"strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."  However, the documents given to Plaintiff were provided as part of the

discovery process, and are not part of a pleading.  Complaints, answers, counterclaims, and

crossclaims are all pleadings.  Fed. R. Civ. P. 7.  Rule 7 does not encompass discovery materials.

Therefore, Plaintiff's motion to strike is denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 34) be

**GRANTED;** and it is further

---

[14]This citation utilizes the page number assigned by the ECF system.

[15]This citation utilizes the page numbers assigned by the ECF system.

**ORDERED** that Plaintiff's motion to compel (Dkt. No. 32) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion to strike (Dkt. No. 32) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: January 31, 2012
          Syracuse, New York

George H. Lowe
United States Magistrate Judge